IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

LISA BEAM STEPHENS and
PAMELA BEAM DRAKE,
Wrongful Death Beneficiaries of
Truman Edward Beam                                          PLAINTIFFS

v.                                   CIVIL ACTION NO.: 1:13-cv-00244-GHD-DAS

PROGRESSIVE GULF INSURANCE COMPANY                          GARNISHEE

v.

HOLCOMB LOGGING, LLC; DARRYL HOLCOMB;
JAMES HOLCOMB; and IC TRUCKING                              DEFENDANTS

### MEMORANDUM OPINION GRANTING
### GARNISHEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING
### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Presently before this Court are a motion for summary judgment [72] filed by Garnishee

Progressive Gulf Insurance Company and a motion for summary judgment [101] filed by

Plaintiffs Lisa Beam Stephens and Pamela Beam Drake. Upon due consideration, the Court

finds that Garnishee's motion for summary judgment [72] is well taken and shall be granted, and

Plaintiffs' motion for summary judgment [101] is not well taken and shall be denied.

### A. Factual and Procedural Background

Plaintiffs Lisa Beam Stephens and Pamela Beam Drake (collectively, "Plaintiffs"),

wrongful death beneficiaries of the Decedent, Truman Edward Beam ("Decedent"), filed suit in

the Circuit Court of Itawamba County, Mississippi, against Defendants Darryl Holcomb; James

Holcomb; Holcomb Logging, LLC; and IC Trucking (collectively, "Defendants"), alleging that

while working as a truck driver for Defendants, Decedent was standing outside a vehicle when

1

he was struck and killed by a loaded log truck operated by Defendant James Holcomb, and that Decedent's cause of death "was the wrongful or negligen[t] act or omission of Defendants or by such unsafe machinery owned and operated by Defendants or the failure of Defendants to keep their vehicle under control, failure to maintain a proper lookout for the path of their vehicle, and failure to yield to a pedestrian." Pls.' Am. Compl., State-Ct. R. [26-25] ¶¶ 6–7. After Plaintiffs filed an uncontested motion for summary judgment, the state court granted the motion, finding that "[Decedent] died as a result of injuries sustained, which were proximately caused by the impact of a log truck and trailer owned and operated by the Defendants and their agents/employees, and that the death of [Decedent] was proximately caused by the negligence and wrongful actions of the aforesaid Defendants." State-Ct.'s Order Granting Pls.' Am. Mot. Summ. J., State-Ct. R. [26-20] at 1. After a hearing was held to determine damages, the state court entered a judgment in favor of Plaintiffs against Defendants in the amount of $920,034.00 plus court costs in the amount of $120.00 and post-judgment interest at the legal rate of 8% per annum. No appeal was taken from the judgment.

Subsequently, Plaintiffs made a proper suggestion for writ of garnishment against Defendants and/or Progressive Gulf Insurance Company ("Garnishee" or "Progressive"). Garnishee had not been a party to, nor did it participate in, the state-court proceeding. The writ of garnishment was issued by the Circuit Clerk of Itawamba County, Mississippi, and was served on Garnishee. Garnishee filed its notice of removal within thirty days of receipt of the writ of garnishment, removing the garnishment proceeding to this Court and filing its own separate declaratory judgment action. Garnishee maintains that no insurance coverage exists under Garnishee's policy for the subject incident. Plaintiffs filed a counterclaim asserting fraud as basis of recovery and an amended counter-complaint.

2

Subsequently, Garnishee filed a motion for summary judgment [72], attacking the jurisdictional basis of the underlying state-court judgment and the merits of the garnishment action. Plaintiffs filed their own motion for summary judgment [101] in response, presenting several arguments in support of liability coverage for the subject incident. On April 17, 2015, this Court entered an Order [124] and memorandum opinion [125] granting Garnishee's motion for summary judgment insofar as declaring the state-court judgment void as to Defendants Darryl Holcomb, James Holcomb, and IC Trucking; dismissing Defendants Darryl Holcomb, James Holcomb, and IC Trucking as parties to the action; and denying Garnishee's motion for summary judgment insofar as declaring the state-court judgment valid and entitled to full faith and credit as to Defendant Holcomb Logging, LLC. The reasoning in that memorandum opinion [125] is hereby incorporated into this opinion.

In that Order [124] and memorandum opinion [125], the Court also held in abeyance the sole issue remaining on summary judgment: whether the Progressive insurance policy, issued to Darryl Holcomb and IC Trucking, provides coverage as to the liability of Holcomb Logging, LLC for the subject incident. The Court gave the parties an opportunity to brief the same. Plaintiffs and Garnishee filed supplemental briefing; Defendant Holcomb Logging, LLC did not file supplemental briefing. Subsequently, the Court held an oral argument relative to the issue on July 27, 2015. Taking into account all of the foregoing, the Court is now ready to rule on the sole remaining issue on summary judgment.

### B. Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). *See* FED. R. CIV. P. 56(a); *Johnston & Johnston v. Conseco Life Ins. Co.*, 732 F.3d 555, 561 (5th Cir. 2013). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* at 323, 106 S. Ct. 2548. Under Rule 56(a), the burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S. Ct. 2548; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

It is axiomatic that in ruling on a motion for summary judgment "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, —— U.S. ——, ——, 134 S. Ct. 1861, 1863, 188 L. Ed. 2d 895 (2014) (per curiam) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)); *see, e.g., Ard v. Rushing*, 597 F. App'x 213, 217 (5th Cir. 2014) (per curiam) (quoting *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006) (on summary judgment, " '[w]e view the evidence in the light most favorable to the non-moving party' ")). The Court " 'resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of

contradictory facts.' " *Thomas v. Baldwin*, 595 F. App'x 378, 378 (5th Cir. 2014) (per curiam) (quoting *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quotation marks and citation omitted)). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.' " *Id.* (quoting *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

"[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.' " *Cotton*, 134 S. Ct. at 1866 (quoting *Anderson*, 477 U.S. at 249, 106 S. Ct. 2505); *see Stewart v. Guzman*, 555 F. App'x 425, 430 (5th Cir. 2014) (per curiam) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 635 (5th Cir. 2011) (In ruling on a summary judgment motion, "[w]e neither engage in credibility determinations nor weigh the evidence.")).

### C.  *Analysis and Discussion*

As stated, the sole issue before the Court at this juncture is whether the Progressive insurance policy, issued to Darryl Holcomb and IC Trucking, provides coverage as to the liability of Holcomb Logging, LLC for the subject incident. If the Progressive policy in question provided coverage for Holcomb Logging, LLC for the incident in question, Garnishee would be liable to cover the extent of liability of Holcomb Logging, LLC up to the policy limits. However, as Garnishee correctly urges in its motion and briefs, that is not the situation in this case.

" 'The interpretation of an insurance policy is a question of law, not one of fact.' " *Minn. Life Ins. Co. v. Columbia Cas. Co.*, 164 So. 3d 954, 967–68 (Miss. 2014) (quoting *Noxubee Cnty. Sch. Dist. v. United Nat'l Ins. Co.*, 883 So. 2d 1159, 1165 (Miss. 2004) (quotation marks omitted)). An insurance policy is a contract between the insurer and the insured, with the rights

5

and duties set out by the provisions of the insurance policy; as such, an insurance policy is a contract subject to the general rules of contract interpretation. *ACS Constr. Co. of Miss. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 725 So. 2d 779, 781 (Miss. 1998)); *Haney v. Cont'l Cas. Co.*, No. 3:08cv482–DPJ–JCS, 2010 WL 235025, at \*2 (S.D. Miss. Jan. 15, 2010) (citing *Sennett v. U.S. Fid. & Guar. Co.*, 757 So. 2d 206, 212 (Miss. 2000)); *Miss. Ins. Guar. Ass'n v. Blakeney*, 54 So. 3d 203, 205 (Miss. 2011). "Under Mississippi law, the construction of an insurance contract is limited to examining the policy." *Am. States Ins. Co. v. Natchez Steam Laundry*, 131 F.3d 551, 555 (5th Cir. 1998) (citing *Emp'rs Mut. Cas. Co. v. Nosser*, 164 So. 2d 426, 430 (Miss. 1964)). "A policy must be considered as a whole, with all relevant clauses together." *U.S. Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008). " 'No rule of construction requires or permits [Mississippi courts] to make a contract differing from that made by the parties themselves, or to enlarge an insurance company's obligations where the provisions of its policy are clear.' " *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007) (quoting *State Auto. Mut. Ins. Co. of Columbus v. Glover*, 176 So. 2d 256, 258 (Miss. 1965)). "The policy itself is the sole manifestation of the parties' intent, and no extrinsic evidence is permitted absent a finding by a court that the language is ambiguous and cannot be understood from a reading of the policy as a whole." *Am. States Ins. Co.*, 164 So. 2d at 555 (citing *Great N. Nekoosa Corp. v. Aetna Cas. & Sur. Co.*, 921 F. Supp. 401, 406 (N.D. Miss. 1996)).

With all of the foregoing in mind, the Court turns to the arguments raised by the parties on summary judgment. The Court finds as follows.

6

## 1. **Duty to Defend**

First, Garnishee argues that Holcomb Logging, LLC never tendered defense or indemnity of the underlying state-court suit to Garnishee and never provided Garnishee with legal papers and information pertaining to the suit, as required by the policy to trigger a duty to defend. Plaintiffs argue as a threshold matter that Garnishee has never set forth this contention as an affirmative defense and is estopped from raising it at this juncture. The Court finds to the contrary that Garnishee has adequately pled throughout its answer and affirmative defenses filed in the case *sub judice* that coverage under the Progressive policy was never triggered and, thus, that Garnishee had no duty to defend Defendants in the underlying state-court litigation. Furthermore, Garnishee was never a party to the state-court case and therefore had no opportunity to raise the duty to defend as an affirmative defense in that proceeding. The Court finds that this threshold argument by Plaintiffs is not well taken and now turns to the argument raised by Garnishee: that the parties waived any right of defense from Garnishee as a result of non-compliance with the Progressive policy's requirements that were a condition precedent to coverage, and thus, waived any right to coverage for the judgment obtained against Defendants in the state-court litigation.

"Under Mississippi law, the determination of whether an insurance company has a duty to defend depends upon the language of the policy as compared to the allegations of the complaint in the underlying action." *Minn. Life Ins. Co.*, 164 So. 3d at 970. "An insurance company's duty to defend is not triggered <u>until it has knowledge</u> that a complaint has been filed that contains allegations of conduct covered by the policy. . . . No such duty arises when the alleged conduct falls outside the policy's coverage." *Auto. Ins. Co. of Hartford v. Lipscomb*, 75

7

So. 3d 557, 559 (Miss. 2011) (emphasis added). "[T]he insurance carrier has a right to offer the insured a defense, while at the same time reserving the right to deny coverage in event a judgment is rendered against the insured." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996), *as corrected* (Sept. 19, 1996) (citing *State Farm Mut. Auto. Ins. Co. v. Acosta,* 479 So. 2d 1089, 1092 (Miss. 1985)).

Under Mississippi law, an actual demand to defend may not be necessary to trigger coverage. "[W]here, through independent investigation, an insurer becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Id.* at 1072. In *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.*, 601 F. Supp. 286, 290 (S.D. Miss. 1984), the Southern District of Mississippi "held that an insurer upon whom there had been no demand to defend could nevertheless incur liability where it had notice of an event potentially within coverage of its policy and of its legal responsibility to defend. In that case, . . . the insurer was notified of the accident and had on at least two occasions denied coverage to its insured." *Jones v. So. Marine & Aviation Underwriters, Inc.*, 739 F. Supp. 315, 323 (S.D. Miss. 1988) (citing *State Farm*, 601 F. Supp. at 290). However, " '[b]ecause the insurer must eventually pay whatever sums the insured becomes legally obligated to pay, the insurance carrier has the right to select the attorney retained to defend the claim.' " *Progressive Gulf Ins. Co. v. Dickerson & Bowen, Inc.*, 965 So. 2d 1050, 1054 (Miss. 2007) (quoting *Moeller*, 707 So. 2d at 1068) (citing *Hartford Acc. & Idem. Co. v. Foster*, 528 So. 2d 255, 263 (Miss. 1988)).

The Progressive policy provides in pertinent part:

**You** and any person or organization claiming coverage as an insured must:

- assume no obligation, make no payment, or incur no expense without **our** consent, except at the insured's own cost;

- cooperate with **us** in any matter concerning a claim or lawsuit;

- provide any written proof of loss **we** may reasonably require;

- allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;

- promptly send **us** any and all legal papers relating to any claim or lawsuit;

- attend hearings and trials as **we** require;

- submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;

- authorize **us** to obtain medical and other records; and

- allow **us** access to information from any event data recorder, or similar device.

Progressive Policy [3] at 11–12.

Garnishee concedes it was aware of the initial wrongful death suit, which commenced on January 8, 2007, and was styled *Estate of Truman Edward Beam, Deceased, By and Through His Daughter and Next Friend, Lisa D. Stephens, Individually, and on Behalf of Other Unnamed Heirs v. Darryl Holcomb and Crystal Holcomb, Individually, and d/b/a Holcomb Logging.* However, Garnishee maintains it was not made aware of the second wrongful death suit, which commenced on February 12, 2009, and was styled *Lisa Beam Stephens and Pamela Beam Drake,*

*Wrongful Death Beneficiaries of Truman Edward Beam v. Holcomb Logging, LLC, Darryl Holcomb, and James Holcomb*, until Garnishee was served with a subpoena two years after the case was brought. Garnishee maintains that it never received in writing, telephonically, or otherwise any communication or demand requesting the defense and indemnity of the 2009 civil action by Darryl Holcomb, IC Trucking, James Holcomb, or Holcomb Logging, LLC. Garnishee attaches to its supplemental brief in support of summary judgment the affidavit of Lawrence Leeders, which supports that no tender of defense or indemnity was ever made by Holcomb Logging, LLC or its members or counsel after its formation or after its dissolution, which occurred prior to the state court's judgment in the 2009 case. Garnishee further maintains that Holcomb Logging, LLC did not transmit to it the summons and complaint, its answer and defenses, the motion for summary judgment, the state court's Order granting summary judgment, the state court's final judgment, or any other legal papers pertaining to the 2009 lawsuit. In addition, Garnishee maintains that Holcomb Logging, LLC responded in discovery that there was no insurance policy that would satisfy a judgment against it. Overall, Garnishee maintains that Holcomb Logging, LLC never tendered the matter to Garnishee to provide a defense and that it was clearly prejudiced because Holcomb Logging, LLC permitted judgment to be entered against it in the state court action without giving Garnishee an opportunity to participate in the litigation.

Plaintiffs argue that Garnishee received notice of the incident at issue and litigation, generated over 700 pages of claim file documents, denied coverage, and had more than ample opportunity to participate and defend in the underlying action, but did not do so on the basis that no liability coverage existed because the pullout truck and attached trailer were not insured autos under the policy. Plaintiffs cite their own timeline of events, but fail to cite any documents in the

10

state-court record demonstrating this participation and acknowledgment by Garnishee in the underlying state-court litigation.

The focus of this Court in this garnishment action is on the underlying 2009 state-court case upon which the writ of garnishment is based. The record before this Court reveals that Garnishee was made aware of the 2009 lawsuit two years after its commencement. The state-court record includes a subpoena *duces tecum* issued by Plaintiffs to Garnishee on March 22, 2011 for "any and all insurance policies which were in effect on January 4, 2007, for which James Holcomb was an insured driver" and "any and all contents, including photographs, of any and all files in your possession concerning the death of Truman Edward Beam on January 4, 2007," SDT to Garnishee [26-60] at 1, as well as a return on the same executed on April 12, 2011 and filed in the state court on April 18, 2011, SDT to Garnishee Return [26-46] at 1. Additionally, the state-court record includes a subpoena *duces tecum* issued by Plaintiffs to Garnishee for the following:

> (1) a copy of an insurance policy issued to Darrell [sic] Holcomb/IC Trucking, namely: Policy No. 03313177-0; along with a copy of the Declarations Page.

> (2) a copy of the policy issued to Darrell [sic] Holcomb/IC Trucking, namely: 03313177-1; along with a copy of the Declarations Page.

> (3) photographs taken of any of the insured vehicles/trailers which were covered under the above-referenced policies, as well as any other documents evidencing a description of the aforesaid vehicles/trailers.

> (4) any and all documents evidencing any lapses in coverage concerning the above-referenced policies.

11

2d SDT to Garnishee [26-37] at 1. Thus, based on the state-court record before this Court and the record in the case *sub judice*, the evidence supports that Garnishee was aware of the 2009 case two years after its commencement.

However, no evidence before this Court supports that Defendants, including Holcomb Logging, LLC, requested coverage under the Progressive policy for the subject incident during the state-court litigation. Additionally, no evidence before this Court supports that Defendants, including Holcomb Logging, LLC, ever made a demand for Garnishee to defend them in the underlying state-court litigation. Instead, Defendants were represented and defended by an attorney they personally hired, Michael Gratz, at all stages of the state-court litigation. Therefore, Garnishee was not involved in Defendants' representation in the state-court litigation, which ultimately resulted in a judgment against Defendants, including Holcomb Logging, LLC. After the judgment was rendered, Defendants did not appeal the judgment. Garnishee was not involved in the decision not to respond to Plaintiffs' motion for summary judgment, nor was Garnishee involved in the hearing to set damages or Defendants' decision not to appeal the judgment.

In the opinion of this Court, the record before the Court is clear that Garnishee suffered prejudice as a result of not being informed of the 2009 state-court suit until 2011, and thus, that Garnishee had no duty to defend Defendants in the 2009 state-court suit. However, even assuming *arguendo* some genuine dispute of material fact still exists as to whether Garnishee suffered prejudice as a result of the lack of notice of the 2009 state-court suit, regardless, Garnishee had no duty to defend if no coverage existed under the Progressive policy for the incident at issue. As shown below, coverage for the subject incident did not exist under the Progressive policy and, thus, Garnishee had no duty to defend Holcomb Logging, LLC in the

12

underlying state-court suit. The Court now turns to the arguments by Garnishee and Plaintiffs concerning possible coverage under the Progressive policy.

## 2. **Coverage Under the Progressive Policy**

The underlying state-court judgment forming the basis of this garnishment action was issued as to all Defendants. Because this Court has held that the judgment is only valid and binding as to Holcomb Logging, LLC, the state-court judgment is in effect as follows: "[Decedent] died as a result of injuries sustained, which were proximately caused by the impact of a log truck and trailer owned and operated by [Holcomb Logging, LLC] and [its] agents/employees, and that the death of Truman Edward Beam was proximately caused by the negligence and wrongful actions of the aforesaid [Holcomb Logging, LLC]." State-Ct.'s J. [20-26] at 1. The finding of the state-court was thus that Holcomb Logging, LLC and its agents/employees owned and operated the log truck and trailer involved in the subject incident, and that Decedent's death was proximately caused by Holcomb Logging's negligence and wrongful actions. Unquestionably, Holcomb Logging, LLC has liability for the subject incident based on *res judicata*.

The quandary is whether the Progressive policy at issue provides coverage for Holcomb Logging, LLC. Garnishee argues that the policy does not provide coverage, because Holcomb Logging, LLC was not an "insured" under the policy and the truck and trailer involved in the incident were not "insured autos" under the policy. Plaintiffs argue to the contrary that the policy provides coverage, because Holcomb Logging, LLC was an "insured" under the policy and the truck and trailer involved in the incident were "insured autos" under the policy or alternatively were covered under two endorsements in the policy. The Court will look to each of these arguments in turn.

13

### **"Insured"**

First, Plaintiffs and Garnishee dispute whether Holcomb Logging, LLC was an "insured" under the Progressive Policy. The Progressive policy defines "insured" in pertinent part as follows:

1. **You** with respect to an **insured auto**.

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow . . . .

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this PART I – LIABILITY TO OTHERS.

Progressive Policy [3] at 10–11. The policy defines "you" as "the named insured shown on the **Declarations Page**." *Id.* at 19.

First, it is clear that Holcomb Logging, LLC is not "you" under subparagraph 1, because it is not listed on the Declarations Page of the policy. Second, it is clear that Holcomb Logging, LLC is not a "person" under subparagraph 2. Because "person" is undefined in the policy, we must attribute to it the meaning in common usage. *See Minn. Life Ins. Co.*, 164 So. 3d at 968 ("Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written."). Merriam-Webster defines "person" as "a human being." *See* Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/. It is clear that Holcomb Logging, LLC is a limited liability company and not a human being; therefore, Holcomb Logging, LLC is not a "person" under subparagraph 2. Third, under subparagraph 3, as Garnishee concedes, Holcomb Logging, LLC could conceivably be an organization; the dispute is whether the remainder of subparagraph 3 is satisfied, that is, whether Holcomb Logging, LLC has "legal

liability . . . for acts or omissions of any person otherwise covered under this PART I –
LIABILITY TO OTHERS."

As stated above, the state court found that Holcomb Logging, LLC was legally liable for
the subject incident. However, this fact is not dispositive on the issue of insurance coverage
under the Progressive policy. The question that bears on insurance coverage is whether
Holcomb Logging, LLC has "legal liability . . . for acts or omissions of any person otherwise
covered under PART I" of the policy. The policy includes liability to others, specifically bodily
injury and property damage liability. *See* Progressive Policy, Decls. Page [3] at 56. Part I of the
Progressive policy provides in pertinent part that Progressive "will pay damages, OTHER THAN
PUNITIVE OR EXEMPLARY DAMAGES, for **bodily injury** [and] **property damage** . . . for
which an **insured** becomes legally responsible . . . . **We** will settle or defend, at **our** option, any
claim or lawsuit for damages covered by this Part I." *Id.* at 10. The Mississippi Supreme Court
has stated that an insurance provision including the terms "legal liability . . . for acts or omissions
of any person otherwise covered" was "a provision that covered vicarious liability for [the other
person's] negligence while driving the insured vehicle." *See Progressive Gulf Ins. Co.*, 965 So.
2d at 1054. Taking all of the foregoing into account, this Court is of the opinion that the subject
policy could provide coverage for damages resulting from the subject incident <u>only if</u> a <u>person</u>
otherwise covered under the policy—either Darryl Holcomb or James Holcomb—was legally
responsible for the damages.

Even if the Court were to find that a genuine dispute of material fact existed as to
whether Holcomb Logging, LLC could be liable for the acts of Darryl Holcomb and/or James
Holcomb under a "continuity of enterprise" or similar theory, it is certain that neither Darryl

Holcomb nor James Holcomb was validly adjudged "legally responsible" for the subject incident.

a. State-Court Judgment Against Defendant Darryl Holcomb

As the Court previously found in its earlier Order [124] and memorandum opinion [125] ruling in part on Garnishee's motion for summary judgment [72], the state-court judgment against Defendant Darryl Holcomb is void under Mississippi law. Mississippi case law is clear that a court is without jurisdiction to enter a judgment against a dead person and that such a judgment is void and subject to collateral attack. *See Wells v. Roberson*, 209 So. 2d 919, 922 (Miss. 1968) (Mississippi Supreme Court has "consistently . . . ruled" that "a judgment against a dead person is a nullity"); *Weis v. Aaron*, 21 So. 763, 763 (Miss. 1897) ("[I]t is the settled law in this state that [a judgment against a deceased person] is absolutely void. And a void judgment may be collaterally assailed."); *Tarleton v. Cox*, 45 Miss. 430, 1871 WL 3998 (1871) (court's jurisdiction is lacking where judgment is rendered against dead person); *Young v. Pickens*, 45 Miss. 553, 1871 WL 4005 (1871) ("A judgment in favor of or against a deceased person is a nullity."); *Parker v. Horne*, 9 George 215, 1859 WL 3682 (Miss. 1859) ("A judgment against a dead person is a nullity.").

"The [Mississippi] Legislature set out the proper procedure in Mississippi Code [§] 13-3-17, saying that '[s]ubstitution of parties in case of death shall be governed by the Mississippi Rules of Civil Procedure.' " *Harris v. Darby*, 17 So. 3d 1076, 1079 (Miss. 2009) (quoting Miss. Code Ann. § 13-3-17). Furthermore, "a garnishment proceeding is in the nature of a civil action and is certainly subject to the rule-making power of this Court and the Mississippi Rules of Civil Procedure the same as any other civil action." *First Miss. Nat'l Bank v. KLH Indus., Inc.*, 457 So. 2d 1333, 1334 (Miss. 1984). "According to Rule 25 of the Mississippi Rules of Civil

Procedure, upon the death of one party, a 'motion for substitution' must be made 'within ninety days after the death is suggested' or 'the action shall be dismissed without prejudice.' " *Burch v. Ill. Cent. R.R. Co.*, 136 So. 3d 1063, 1066–1067 (Miss. 2014) (quoting Miss. R. Civ. P. 25(a)(1)). "When either of the parties to any personal action shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator." Miss. Code Ann. § 91-7-237. "Rule 25 of the Mississippi Rules of Civil Procedure . . . requir[es] death to be suggested upon the record before any dismissal of the suit may be made." *Harris*, 17 So. 3d at 1081. The filing of the suggestion of death is what "trigger[s] the ninety-day time requirement set out by [Rule] 25." *Id.* at 1080.

Taking into account the foregoing case law, this Court reviewed the state-court record and found the following: In the underlying state-court proceeding, neither party suggested the death of Defendant Darryl Holcomb. On June 10, 2010, Plaintiffs filed a motion to substitute pursuant to Rule 25 of the Mississippi Rules of Civil Procedure. *See* Pls.' Mot. Substitute, State-Ct. R. [26-69] at 1–2. In that motion, Plaintiffs stated that Darryl Holcomb "died in Itawamba County, Mississippi after service of process was had upon him in this matter" and that "Plaintiffs would ask the Court to substitute the Deceased's Wife, Crystal Holcomb, as his personal representative in this matter," since "no Estate has been opened and no Will [has been] filed for probate." *Id.* at 1. That motion was duly served on the opposing party and filed in the Circuit Court of Itawamba County. *See id.* at 2. No response was ever filed to the motion. Despite that the motion to substitute was clearly unopposed, the Circuit Court of Itawamba County never ruled on the motion and subsequently granted Plaintiffs' motion for summary judgment against Defendants (including the deceased Darryl Holcomb). *See* State-Ct.'s Order Granting Pls.' Am.

Mot. Summ. J., State-Ct. R. [26-20] at 1. Then, after the state court's summary-judgment ruling but prior to the hearing to determine damages, Plaintiffs filed a motion for voluntary dismissal of all claims against Defendants "James Holcomb, individually" and "Crystal Holcomb Short, individually, although she is not a named Defendant in the above[-]referenced matter." *See* Pls.' Mot. Voluntary Dismissal, State-Ct. R. [26-15] at 1–3. Subsequently, the Circuit Court of Itawamba County entered an Order granting that motion and stating in pertinent part: "Any and all claims against the Defendant, James Holcomb, individually, are hereby dismissed with prejudice. Any and all claims which Plaintiffs may have against Crystal Holcomb Short, individually, are hereby dismissed with prejudice." *See* State-Ct.'s Order Granting Pls.' Mot. Voluntary Dismissal, State-Ct. R. [26-14] at 1. Following the hearing to determine damages, the Circuit Court of Itawamba County entered judgment against Defendants, including in pertinent part the deceased Darryl Holcomb. *See* State-Ct.'s J., State-Ct. R. [26-9] at 1.

This Court is guided by the historically consistent reasoning of the Mississippi Supreme Court in these matters, for example, in *Tarleton v. Cox*:

> What does this record prove? Does the record of judgment, that the court had fully considered the motion, and therefore ordered that it be sustained, import absolute verity, including the presumption that the court had passed upon the question of jurisdiction, or do the previous recitals show affirmatively that the court did not obtain jurisdiction of the person of the representative of the deceased? We are of the opinion that this record not only does not show jurisdiction, but that it appears thereby, that jurisdiction of the person of the administrator was not obtained . . . . It is not shown that the administrator was, in fact, in court, or that he had counsel there, nor that notice of the motion was served upon him, personally or constructively, nor can presumptions of these facts be indulged in from the record, much less, that *scire facias* issued to bring him in. The result is, that the representative of the deceased was not made a party, and the judgment was against a dead man.

18

1871 WL 3998, at *6. Of further guidance to this Court is the Mississippi Supreme Court's statement in *Young v. Pickens* that "the fact [of the death] should have been suggested on the record, and the case continued in the name of the survivor, as such." 1871 WL 4005, at *2. Finally, in *Owen v. Abraham*, 102 So. 2d 372 (Miss. 1958), the Mississippi Supreme Court meaningfully "struck down as a nullity a decree rendered after the death of the defendant in a divorce action," explaining:

> [L]itigation is not to be carried on by or against any deceased person. The impossibility of such a thing is apparent however upon its mere mention. There must be revivors in such suits or else further proceedings therein amount to nothing. Thus, if a defendant die during pendency of a suit and there is no revivor or amendment, but only an unwarranted effort to carry on the suit by substituting a new party to the suit,—not one claiming by or under the former defendant,—the proceeding is entirely erroneous.

102 So. 2d at 373 (quotation marks and citation omitted).

Under Mississippi law, the state-court judgment against Darryl Holcomb, a deceased individual, is a nullity, because the state court did not have jurisdiction over him to enter the judgment. **The Circuit Court of Itawamba County never granted the motion to substitute Crystal Holcomb for the deceased Defendant Darryl Holcomb. Subsequently, that court dismissed with prejudice all claims Plaintiffs may have had against Crystal Holcomb Short, upon Plaintiffs' own motion to do so. There was no order or judgment entered by the Circuit Court of Itawamba County substituting parties.** In short, no viable claims existed against Crystal Holcomb Short at the time the judgment and subsequent writ of garnishment were entered, and the claims against the deceased Darryl Holcomb are absolutely void under Mississippi law.

b. State-Court Judgment Against Defendant James Holcomb

In addition, the state-court judgment against Defendant James Holcomb is void under Mississippi law. In reviewing the state-court record, this Court finds that after the Circuit Court of Itawamba County granted summary judgment in favor of Plaintiffs against Defendants, but prior to the hearing to determine damages, Plaintiffs filed a motion for voluntary dismissal of all claims against Defendants "James Holcomb, individually" and "Crystal Holcomb Short, individually, although she is not a named Defendant in the above[-]referenced matter." *See* Pls.' Mot. Voluntary Dismissal, State-Ct. R. [26-15] at 1–3. Subsequently, the Circuit Court of Itawamba County entered an Order granting the motion, stating in pertinent part: "Any and all claims against the Defendant, James Holcomb, individually, are hereby dismissed with prejudice." *See* State-Ct.'s Order Granting Pls.' Mot. Voluntary Dismissal, State-Ct. R. [26-14] at 1. Following the hearing to determine damages, the Circuit Court of Itawamba County entered a judgment against Defendants, including in pertinent part "James Holcomb." *See* State-Ct.'s J., State-Ct. R. [26-9] at 1.

The state court's dismissal with prejudice of the claims against James Holcomb was a "final judgment on the merits" of the claims asserted against James Holcomb. Subsequent to that dismissal, there was no longer any basis for the state-court's exercise of personal jurisdiction over James Holcomb or subject-matter jurisdiction over the claims against him, and thus, the subsequent judgment against James Holcomb was without jurisdictional basis. *See, e.g.*, *Andrews v. Dairy Farmers of Am., Inc.*, No. 2:11–CV–97–KS–MTP, 2011 WL 5444245, at \*16 (S.D. Miss. Nov. 9, 2011) (after court dismissed claims as to particular defendant, there was no longer a basis for the court's personal jurisdiction over that defendant). Furthermore, "[i]t is clear that a stipulation of dismissal with prejudice, or, for that matter, a dismissal with prejudice

at any stage of a judicial proceeding, normally constitutes a final judgment on the merits which bars a later suit on the same cause of action." *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 534 (5th Cir. 1978); *see Brooks v. Raymond Dugat Co.*, 336 F.3d 360, 363 (5th Cir. 2003) (holding that plaintiff's voluntary dismissal of all claims with prejudice was final judgment on merits).

Because no valid judgment exists against any person who is otherwise covered under the policy, there is no basis under the law and subject policy for coverage to exist for Holcomb Logging, LLC under the terms of the subject policy. In the absence of "legal liability" of Darryl Holcomb or James Holcomb, there is nothing to link Holcomb Logging, LLC—not a named insured in the policy—to the Progressive policy. For all of the foregoing reasons, coverage does not exist under the Progressive policy for Holcomb Logging, LLC.

However, in the interest of thoroughness, the Court now examines the parties' arguments concerning whether the log truck and trailer involved in the subject incident were "insured autos" under the policy or were otherwise covered under endorsements to the policy.

### "Insured Autos"

"Auto" is defined in the policy as follows:

> a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**.

Progressive Policy [3] at 3. "Mobile equipment" is defined in pertinent part in the policy as follows:

> any of the following types of land vehicles including, but not limited to, any attached machinery or equipment:

a. Bulldozers, farm implements and machinery, forklifts[,] and other vehicles designed primarily for use principally off public roads;

b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **Declarations Page** and not defined as **mobile equipment** under other parts of this definition . . . .

*Id.* at 7.

"Insured auto" is defined in the policy as follows:

a. An **auto** specifically described on the **Declarations Page** . . . .

b. Any additional **auto** on the date **you** became the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **Declarations Page**;

(ii) **we** insure all **autos** owned by **you** that are used in **your** business; and

(iii) no other insurance policy provides coverage for that **auto**.

**We** will provide coverage for an additional **auto** for a period of thirty (30) days after **you** become the owner of such additional **auto**. **We** will not provide any coverage after this thirty (30) day period unless within this period **you** ask **us** to insure the additional **auto**. If **you** add any coverage, increase **your** limits[,] or make any other changes to this policy during this thirty (30) day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits[,] or make such changes. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to PART I – LIABILITY TO OTHERS, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **Declarations Page**.

22

c. Any replacement **auto** on the date **you** become the owner if:

(i) **you** acquire the **auto** during the policy period shown on the **Declarations Page**;

(ii) the **auto** that **you** acquire replaces one specifically described on the **Declarations Page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii) no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of thirty (30) days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this thirty (30) day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits[,] or make any other changes to this policy during this thirty (30) day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits[,] or make such changes.

*Id.* at 4–6.

Plaintiffs' state-court complaint alleged that Decedent was struck and killed by a loaded log truck operated by Defendant, James Holcomb. The log truck involved in the incident, apparently a 1973 Mack pullout truck, as indicated throughout the state-court record and the record in the case *sub judice*, is not listed as an insured auto under the policy. *See id.*, Decls. Page [3], at 56–57. The log trailer attached to the truck, from the state-court record, apparently a 1984 FOUN, is also not listed as an insured auto under the policy. *See id.* Although the policy provides coverage in some instances for "newly acquired" autos and "replacement" autos, the truck was purchased on June 23, 2006, and the log trailer was purchased on September 13, 2006. Coverage attaches under the policy for only thirty days after the date of purchase for both newly

acquired autos and replacement autos. As the accident occurred on January 4, 2007, the thirty-day post-purchase period had long since passed. Therefore, the truck and trailer involved in the subject incident were neither "additional" autos nor "replacement" autos under the Progressive policy.

Throughout their response to the motion for summary judgment, briefing, and oral arguments before the Court on the summary-judgment motion, Plaintiffs have argued that the truck and trailer involved in the incident were nonetheless covered under the Z228 Mobile Equipment Endorsement and Endorsement for Motor Carrier Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980 (the "MCS-90 Endorsement"). The Court examines each endorsement in turn.

### Z228 Mobile Equipment Endorsement

The Z228 Mobile Equipment Endorsement, which as its name implies, applies to mobile equipment, does not apply in this case, as the parties agree that the subject truck was subject to the motor vehicle laws in the State of Mississippi and thus did not fall under the definition of "mobile equipment" in the policy which specifically excludes "land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed to be principally garaged. Land vehicles subject to compulsory or financial responsibility law or other motor vehicle law are considered autos." Progressive Policy [3] at 3.

### MCS-90 Endorsement

The Fifth Circuit has explained MCS-90 endorsements as follows: "The endorsement creates a suretyship, which obligates an insurer to pay certain judgments against the insured arising from interstate commerce activities, even though the insurance contract would have

24

otherwise excluded coverage." *Canal Ins. Co. v. Coleman*, 625 F.3d 244, 247 (5th Cir. 2010) (citation omitted). Plaintiffs argue that the MCS-90 Endorsement applies in this case and provides coverage for the log truck involved in the incident, because the logs hooked to the 1973 Mack Truck were headed into interstate commerce. Garnishee argues these units could not be considered vehicles covered under the MCS-90 Endorsement, because they were not operated on the road or in interstate commerce and were not intended to be road vehicles.

The Court finds that the MCS-90 Endorsement does not apply to this case for another reason. The MCS-90 Endorsement specifically provides that "the insurer . . . agrees to pay . . . any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance[,] or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere." *See* MCS-90 Endorsement [3] at 52 (emphasis added). In this case, the possible insureds of the Progressive policy could include the named insureds, Darryl Holcomb and IC Trucking, and possibly James Holcomb. Because no valid final judgment was issued against any insured of this policy, the MCS-90 Endorsement does not apply in this case.

Based on all of the foregoing, no coverage exists under the Progressive policy for the liability of Defendant Holcomb Logging, LLC. Because no genuine dispute of material fact remains in the case *sub judice*, the case must be dismissed as a matter of law.

### D. Conclusion

In sum, Garnishee's motion for summary judgment [72] is GRANTED in its entirety; Plaintiffs' corrected motion for summary judgment [101] is DENIED; all claims are

25

DISMISSED; all pending motions, including the motion to strike designation of expert [81], motion to designate expert [83], motion to appeal magistrate decision [107], motion for hearing and oral argument on motion to appeal [108], and motion for entry of default [117], are DENIED AS MOOT; and this case is CLOSED.

An order in accordance with this opinion shall issue this day.

THIS, the 10th day of August, 2015.

_____
SENIOR U.S. DISTRICT JUDGE